UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kentes West (K82893), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22 C 1275 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| Keenan Young, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kentes West, an Illinois prisoner proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 alleging unconstitutional use of force by correctional officers[1] at Stateville Correctional Center during an altercation on October 14, 2021, as well as deliberate indifference to a serious medical need by two Stateville nurses. Currently before the Court is the IDOC Defendants' motion for summary judgment. (Dkt. 119.) For the reasons set forth below, Defendants' motion is denied.

### I. Summary Judgment Standard

**A. Federal Rule of Civil Procedure 56(a)**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] Plaintiff has named six correctional officers as defendants: Keenan Young, Nicholas Juarez, Scott Nodine, Hakeen Muhammed, Terrence Ross, and Christopher Colloso. The Court refers to all six collectively as the "IDOC Defendants" for purposes of distinguishing between the correctional officer defendants and the two nurses.

matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts showing that there is a genuine issue for trial." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). A factual dispute is genuine when a reasonable jury could return a verdict in favor of the non-moving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B. Local Rule 56.1 (N.D. Ill.)

Local Rule 56.1 governs how to present and how to dispute facts in litigating motions for summary judgment in this District. *See* L.R. 56.1 (N.D. Ill.). Under Local Rule 56.1(a)(2), the moving party must provide a statement of material facts, and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2).

The opposing party must then respond to the movant's statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); L.R. 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). The party opposing summary judgment may also submit "a statement of additional material facts," to

2

which the moving party must respond in the same manner stated above. L.R. 56.1(b)-(c). A party's *pro se* status does not excuse him from complying with Local Rule 56.1. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Because Plaintiff has not responded to Defendants' factual statements, the Court will accept those statements as true to the extent supported by the record. *See Flint v. City of Belvidere*, 791 F.3d 764, 766–67 (7th Cir. 2015); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Even so, Plaintiff's failure to file a response to the Local Rule 56.1 statement of facts is not a basis for automatically granting the motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court will apply these standards in evaluating the record.

## II. Background

### A. Procedural Background

The IDOC Defendants filed their motion for summary judgment on February 20, 2024, along with a supporting memorandum of law and exhibits. (Dkt. 119, 120, 121.) Belatedly, and with permission from the Court, the IDOC Defendants also filed a Local Rule 56.1 Statement of Material Facts on May 31, 2024. (Dkt. 152.)

On April 16, 2024, after withdrawing previously-filed responsive documents, Plaintiff filed his response to Defendants' motion for summary judgment, along with a supporting memorandum of law and exhibits. (Dkt. 140, 141, 142.)

The Court scheduled the IDOC Defendants' reply in support of their motion for

summary judgment for May 24, 2024; however, no reply was ever filed. (Dkt. 145.)[2] Similarly, the Court scheduled Plaintiff's response to the IDOC Defendants' Rule 56.1 Statement for June 21, 2024; however, no response was ever filed. (Dkt. 150.)

Separately, Plaintiff submitted a "statement of additional facts" objecting to the IDOC Defendants' citations to his deposition testimony (Dkt. 136) as well as a "second statement of additional facts" arguing that the IDOC Defendants' motion was untimely. (Dkt. 137). On May 9, 2024, the Court entered an order construing Plaintiff's two statements of additional facts as a motion to suppress and a motion to strike, respectively, recognizing that the IDOC Defendants' responses to these submissions were already on file (Dkt, 138, 139), and scheduling Plaintiff's replies, if any, to be filed by May 31, 2024. Plaintiff sought, and was granted, an extension of time in which to file his replies in support of his motion to suppress and motion to strike; however, no replies were ever submitted. (Dkt. 149, 151.)

### 1. Plaintiff's Motion to Strike the IDOC Defendants' Motion

Plaintiff's "second statement of additional facts" (construed as a motion to strike the IDOC Defendants' motion for summary judgment) is denied. Plaintiff is correct in noting that the IDOC Defendants filed their motion for summary judgment

---

[2] On October 4, 2024, the IDOC Defendants filed a motion to clarify requesting "clarification as to which Response they are to file a Reply to." (Dkt. 158.) The Court denies the IDOC Defendants' motion to clarify as both belated and disingenuous. The Court's May 9, 2024 order identified the specific docket entries that constituted Plaintiff's response to which a reply was expected. No more clarity was necessary then or is necessary now. *See* Dkt. 145 ("The Court takes Plaintiff's response to the IDOC defendants' summary judgment motion [140] [141] [142] under advisement; any reply is due by 5/24/24.").

approximately five months after the September 25, 2023 deadline, without seeking (or receiving) an extension of time from the Court. In their response to Plaintiff's motion to strike, the IDOC Defendants argue that their belated motion should be allowed under Federal Rule of Civil Procedure 6(b)(1)(B) on the grounds of "excusable neglect." This argument fails to acknowledge that the IDOC Defendants have *never* sought permission from the Court for their belated filing. *See* Fed. R. Civ. Pro. 6(b)(1)(B) ("the court may, for good cause, extend the time [. . . ] *on motion made after the time has expired* if the party failed to act because of excusable neglect") (emphasis added). Nevertheless, while the Court in no way condones this litigation conduct, the Court finds no prejudice to Plaintiff due to the delay. Accordingly, the Court construes the IDOC Defendants' response as a Rule 6(b)(1)(B) motion, grants the request to permit their late-field motion for summary judgment, and reviews the IDOC Defendants' motion for summary judgment on the merits. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) ("District courts have considerable discretion to manage their dockets and to require compliance with deadlines."); *Lockhart v. St. Bernard Hosp.*, 538 Fed. App'x 720, 722 (7th Cir. 2013) (finding no abuse of discretion when plaintiff was given "ample" time in which to respond to a late-filed motion for summary judgment).

### 2. Plaintiff's Motion to Suppress Use of His Deposition Testimony

Plaintiff's "statement of additional facts" (construed as a motion to suppress use of his deposition testimony) is denied. Plaintiff notes that he explicitly reserved his right to review his deposition transcript but argues that the IDOC Defendants "failed

5

to follow the law" resulting in a deposition transcript that is as yet "unverified" by Plaintiff. (Dkt. 136, pg. 3.) Plaintiff appears to be arguing that he did not receive a copy of the transcript or have an opportunity to submit an errata sheet in accordance with Federal Rule of Civil Procedure 30(e). In response, the IDOC Defendants have submitted evidence that the court reporter sent a copy of the May 24, 2023 deposition transcript to the prison's litigation coordinator on June 9, 2023 with instructions to share the transcript with Plaintiff for his review. (Dkt. 138-1, pg. 1.) The Court need not resolve the question of whether Plaintiff actually received a copy of the deposition transcript from the litigation coordinator in June 2023 and assumes, for purposes of addressing Plaintiff's motion, that he did not. Regardless, Plaintiff has had a copy of his deposition transcript since at least February 2024. (*See* Dkt. 121-1.) In responding to the IDOC Defendants' motion for summary judgment, Plaintiff has not identified any portions of the transcript containing errors in need of correction. The Court therefore denies Plaintiff's motion to suppress.

### B. Factual Background

The IDOC Defendants make only one argument in support of their motion for summary judgment: Plaintiff's claim for excessive force is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), based on Plaintiff's convictions on disciplinary charges before the IDOC's in-house disciplinary tribunal. To properly apply *Heck*, "a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006); *see also Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008)

6

(applying *Heck* to ruling by prison disciplinary tribunal). Accordingly, the material facts relevant to the IDOC Defendants' motion for summary judgment are limited to "the facts underlying the excessive force claim" and "the essential facts supporting [Plaintiff's] conviction" by the Adjustment Committee. *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). For purposes of their summary judgment motion, the IDOC Defendants have not disputed Plaintiff's version of events, except as contradicted by the Adjustment Committee's findings. (*See* Dkt. 120, n.2.)

**1. Plaintiff's Version of Events**

According to Plaintiff, on October 14, 2021, while incarcerated at the Stateville Correctional Center, he was handcuffed by Defendant Young and was being escorted to X-House when Defendant Young grabbed the back of his shirt and began pulling to make him choke as they were walking. (Dkt. 152 ("Defs.' SOF") ¶ 2.) When they arrived outside of X-House, Defendant Young took off the handcuffs and, when Plaintiff turned around, he hit and punched the Plaintiff in his face. (Defs.' SOF ¶ 3.) After throwing one reflexive punch, Plaintiff "tried covering up and blocking [his] face from the punches while backing up." (Dkt. 9 ("Compl.") pg. 12; *see also* Dkt. 121-1 ("Pl.'s Dep.") at 112:13-24, 114:8-15; Defs.' SOF ¶ 3.)[3] Plaintiff then "drop[ped] to one

---

[3] As noted by Plaintiff in his response, the IDOC Defendants fail to acknowledge Plaintiff's testimony that he was in a submissive posture at the time the other officers arrived on the scene. *See* Dkt. 141, pg. 3 (The Defendant[s] omit or failed to state that in [his] testimony Plaintiff states *while he was on his knees* he was dragged to a different location pushed down to the ground and then beaten more severely by the responding prison guards.") (emphasis added). This testimony is critical to the Court's analysis of the IDOC Defendants' motion and is consistent with Plaintiff's allegations in his complaint. The Court therefore includes citations to Plaintiff's deposition testimony as a means of providing the full context for the IDOC Defendants' statement that "other

7

knee putting one hand up and covering [his] head from the punches with the other." (Compl. pg. 12; *see also* Pl.'s Dep. at 50:21-51:8.) It was at this point that the other guards arrived. (Compl. pg. 12; *see also* Pl.'s Dep. a 114:8-115:13 (Plaintiff "went down and covered up" when he heard the other guards coming).) Plaintiff does not recall the precise time when each guard arrived on the scene, in part because his back was to the door and he was covering his head. (Pl.'s Dep. at 52:2-5, 55:2-9, 55:24-56:10.) Plaintiff was "on [his] knees covering up" when he was "dragged in front of the stairs and laid on the ground" at which point "everybody started punching and kicking" him, including Defendants Juarez, Nodine, Muhammed, Ross, and Colloso. (Pl.'s Dep. at 54:6-12, 55:19-56:10, 61:20-62:6, 68:1-18; *see also* Defs.' SOF ¶ 4.) Defendant Juarez "jumped" on Plaintiff's shoulder and back while Plaintiff was on the ground and Plaintiff told the guards he could not breathe. (Pl.'s Dep. at 54:2-6, 56:11-23, 57:17-23; *see also* Compl. pg. 12.) Defendant Nodine responded, "If you can talk, you can breathe" and ordered one of the guards to get leg shackles. (Pl.'s Dep. at 57:17-58:11; *see also* Compl. pgs. 12-13.) Plaintiff denies being combative at any time after his first reflexive punch and denies that he was kicking with his legs at all. (Pl.'s Dep. at 59:1-23.) Defendants stopped kicking and punching Plaintiff after he was secured in leg shackles. (Pl.'s Dep. at 65:7-10; *see also* Defs.' SOF ¶ 5.) Defendant Muhammed then noticed Plaintiff was not in handcuffs. (Pl.'s Dep. at 66:4-12.) Defendant Muhammed pulled Plaintiff's arm out from under him, despite the fact that Plaintiff still had an

---

correctional officers then jumped onto Plaintiff and began kicking and punching him." *See* Defs.' SOF ¶ 4.

8

officer on his back, causing scrapes to Plaintiff's right arm and fingers. (Pl.'s Dep. at 63:5-64:5 118:2-10.)

### 2. The Adjustment Committee's Findings

Plaintiff was issued a disciplinary ticket[4] for the incident on October 14, 2021 and charged with four offenses: violent assault of any person; assault with injury; damage or misuse of property; and disobeying a direct order essential to safety. (Defs.' SOF ¶ 6.) On November 3, 2021, a disciplinary hearing was held by the Adjustment Committee. (Defs.' SOF ¶ 7.)

The Adjustment Committee's Final Summary Report documented the following findings:

> Based on the observations of the reporting employee,[5] this R/Lt. was escorting Individual in Custody West, Kentes K82893 to Unit X to be placed on a watch. West was restrained in handcuffs and as we were approaching the X-House, West tampered with his cuffs and removed his hands. West then began to assault this R/Lt. with the cuffs, causing this R/Lt. to sustain serious injuries including a broken nose, chipped teeth, abrasions on my back and neck and received stitches above my eyebrow. I gave West direct orders to stop, to which he refused. West went on top of this R/Lt. and continued to strike my face area with the cuffs. Individual in Custody West, Kentes K82893 was identified by State Issued ID and familiarity.

---

[4] As Plaintiff notes, he was actually issued *two* disciplinary tickets for his actions on October 14, 2021. (*See* Dkt. 141, pgs. 17-18 (citing Dkt. 142, Pl.'s Ex. 3).) The IDOC Defendants do not argue that Plaintiff's claims are barred by the findings related to disciplinary ticket #202101395/1-MEN, so the Court does not further address this ticket. Plaintiff is cautioned, however, that he cannot challenge the Adjustment Committee's specific findings of fact in relation to either disciplinary ticket should this case progress to trial.

[5] The Court understands the report's references to "the reporting employee" "this R/Lt." and "I" or "we" to refer to Defendant Young.

(Defs.' SOF ¶ 9.)

The Adjustment Committee accepted the written report to be a factual account of the incident, noting that it was "satisfied the violations occurred as reported" and that the committee had verified the account based on photographic evidence from "Intel at Stateville Correctional Center." (Defs.' SOF ¶ 9.)

The Adjustment Committee found Plaintiff guilty of three of the four charges.[6] As punishment, Plaintiff was given "3 Months C Grade; 6 Months Segregation, and 6 Months Contact Visits Restriction." (Defs.' SOF ¶ 10.)

### III. Analysis

Under *Heck*, a § 1983 action for damages is unavailable if success would necessarily imply the invalidity of the plaintiff's still-intact criminal conviction or sentence. *Heck*, 512 U.S. at 486-87. As noted above, the *Heck* rule applies to prison disciplinary actions as well as criminal convictions. *Gilbert*, 512 F.3d at 900 (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)).

An excessive force claim can in some circumstances co-exist with a valid conviction. *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). But a plaintiff can only proceed "to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Helman*, 742 F.3d at

---

[6] The IDOC Defendants' 56.1 Statement claims that Plaintiff was found guilty of all four charges; however, this statement is not supported by the cited evidence. *Compare* Defs.' SOF ¶ 8 *with* Dkt. 121-2, pg. 9 ("not guilty" on charge of Violent Assault Of Any Person – Staff ("Hit staff with cuffs").)

762. To properly apply *Heck*, "a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *VanGilder*, 435 F.3d at 691. Ultimately, "[t]he *Heck* rule is analogous to collateral estoppel: an issue determined with finality in a full and fair adjudicative proceeding (and essential to the decision in that proceeding) cannot be reopened in a subsequent case." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011).

The case of *Gilbert v. Cook* is instructive. Prior to litigation, a prison disciplinary board found plaintiff Alex Gilbert guilty of punching a prison guard while his handcuffs were being removed. Gilbert denied punching the guard and brought a lawsuit under § 1983 alleging that prison guards assaulted him immediately after the events adjudicated by the prison disciplinary board (*i.e.,* after Gilbert punched the guard) engaging in on-the-spot corporal punishment in violation of the Eighth Amendment. The Seventh Circuit noted that Gilbert was bound by the prison disciplinary board's finding (that Gilbert struck the first blow), but at the same time "[a] contention that a guard struck back *after* being hit is compatible with *Heck*." *Gilbert*, 512 F.3d at 900-01 (emphasis added). Put another way, "*Heck* and *Edwards* do not affect litigation about what happens after the crime is completed." *Id.* at 901. Other cases involving disciplined prisoners have come to the same conclusion. *See Navejar v. Iyiola*, 718 F.3d 692, 697-98 (7th Cir. 2013) (no *Heck* bar where prisoner who was found guilty of punching a prison guard alleged that guards purportedly kicked, stomped and pepper-sprayed him after he was subdued); *Elcock v. Whitecotton*, 434 Fed. App'x 541, 543 (7th Cir. 2011) (prisoner could proceed on

11

excessive force claim "without running afoul of *Heck* and *Edwards*" based on allegations that after she kicked the guard she was physically and sexually assaulted).

Plaintiffs who deny wrongdoing are barred from challenging the disciplinary board's findings; however, any excessive force claims that are not necessarily inconsistent with these findings are permitted to proceed. *See Gilbert*, 512 F.3d at 902 ("[i]t would have sufficed to tell the jurors that [. . .] any statements to the contrary [. . .] must be ignored"); *Moore*, 652 F.3d at 726 ("rather than dismissing the case with prejudice [the district judge] should either have retained it but warned the plaintiff that he could not challenge the findings made by the disciplinary board or have permitted him to file a second amended complaint that would delete all allegations inconsistent with those findings"); *Elcock*, 434 Fed. App'x at 543 ("the district court should either disregard portions of the complaint that deny Elcock's misconduct, or direct Elcock to file an amended complaint that omits any impermissible allegations").

In this case, the Adjustment Committee's Final Summary Report does not explain how the altercation between Plaintiff and Defendant Young ended, nor does it include any findings at all with respect to Defendants Juarez, Nodine, Muhammed, Ross, or Colloso. Plaintiff's version of events—that at some point he stopped fighting Defendant Young and that he was on his knees, covering his head in a submissive posture when the other officers arrived on the scene—is therefore not *necessarily* inconsistent with the committee's findings. *See Nelson v. Campbell*, 541 U.S. 637, 647

12

(2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'"); *compare Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 (7th Cir. 2008) ("The fact that Hardrick struggled while being handcuffed at one point in time does not preclude the possibility that at another point in time, Hardrick was peaceably waiting to be handcuffed.") (internal quotation marks omitted). Put another way, it is entirely possible for the version of events outlined in the Final Summary Report and for Plaintiff's allegations of excessive force to co-exist, which means *Heck* does not apply.

Defendants cite *Walker v. Gramley*, No. 14-1292, 2014 WL 4668662, at *2 (C.D. Ill. Sept. 19, 2014), in support of their argument that "Plaintiff's claim of excessive force against Defendants is barred by the *Heck* doctrine and must be dismissed." (Dkt. 120, pg. 7.) In *Walker*, the plaintiff admitted he had been disciplined as a result of the underlying "incident" and the district court found that the plaintiff "would need to undermine the Disciplinary Committee's findings" in order to prevail on his excessive force claim. *Walker*, 2014 WL 4668662, at *3. The district court concluded that plaintiff's excessive force claim could not proceed based on *Heck* and *Edwards* and dismissed the claim at the initial screening stage pursuant to 28 U.S.C. § 1915A. The district court's decision was upheld on appeal, albeit with one modification: that the excessive force claim should have been dismissed without prejudice. *See also Morgan v. Schott*, 914 F.3d 1115, 1122 (7th Cir. 2019) ("*Heck*-barred claims must be dismissed [. . .] [and] Morgan's claim should have been dismissed *without* prejudice.") (emphasis in original). The *Walker* case was at a different stage of litigation that this case and, perhaps for that reason, the court in *Walker* did not engage in analysis of the specific

13

charges, findings, or allegations of excessive force at issue. This Court therefore declines to apply *Walker*'s analytical framework to the pending motion for summary judgment. *Compare Viramontes v. City of Chi.*, 840 F.3d 423, 428 (7th Cir. 2016) (key principle "entrenched in our case law" when applying *Heck* is the focus on the disciplinary board's factual findings and "the *factual basis* of the claim" at issue) (quoting *Helman*, 742 F.3d at 762) (emphasis in original).

## IV. Conclusion

For the reasons set forth above, the Court denies the IDOC Defendants' motion for summary judgment (Dkt. 119), as well as Plaintiff's "statement of additional facts" (Dkt. 136) (construed as a motion to suppress use of his deposition testimony), Plaintiff's "second statement of additional facts" (Dkt. 137) (construed as a motion to strike the IDOC Defendants' motion for summary judgment), and the IDOC Defendants' motion to clarify (Dkt. 158).

Date: 1/10/25 /s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge