UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kentes West (K82893), | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 22 C 1275 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| Keenan Young, *et al.*, | ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Kentes West, an Illinois prisoner proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 alleging that two nurses[1] at Stateville Correctional Center were deliberately indifferent to his serious medical needs on October 14, 2021, after he was injured during an altercation with Stateville correctional officers. Currently before the Court is the Medical Defendants' motion for summary judgment. Dkt. 105. For the reasons set forth below, the Court denies the Medical Defendants' motion.

**I. Summary Judgment Standard**

**A. Federal Rule of Civil Procedure 56(a)**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could

---

[1] The Court refers to Nurse Dybas and Nurse Lewandowska as the "Medical Defendants" for purposes of distinguishing between the two nurses and the defendants who are correctional officers.

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The party seeking summary judgment has the initial burden of demonstrating the "absence of evidence to support the non-moving party's case." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If this burden is met, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### B. Local Rule 56.1 (N.D. Ill.)

Local Rule 56.1 governs how to present and how to dispute facts in litigating motions for summary judgment in this District. *See* L.R. 56.1 (N.D. Ill.). Under Local Rule 56.1(a)(2), the moving party must provide a statement of material facts, and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2).

The opposing party must then respond to the movant's statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); L.R. 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not

controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). The party opposing summary judgment may also submit "a statement of additional material facts," to which the moving party must respond in the same manner stated above. L.R. 56.1(b)-(c). A party's *pro se* status does not excuse him from complying with Local Rule 56.1. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the facts identified by Plaintiff to the extent they are supported by the record, or he could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). The Court will not look beyond the cited material, however. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

Additionally, Plaintiff's failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting the Medical Defendants' motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court will apply these standards in evaluating the evidence.

## II. Background

### A. Procedural Background

The Medical Defendants filed their motion for summary judgment on November 7, 2023, along with a memorandum of law, a Local Rule 56.1(a) statement of material facts, and supporting exhibits. Dkt. 105, 106, 107. As required by Local Rule 56.2, the Medical Defendants also

provided Plaintiff with a formal Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment. Dkt. 108. Plaintiff's response materials include a response to each numbered paragraph in the Medical Defendants' motion, Dkt. 113, a response to each numbered paragraph in the Medical Defendants' Local Rule 56.1(a) statement, Dkt. 112, and a brief that includes a supporting declaration and attached exhibits, Dkt. 114. The Medical Defendants filed a timely reply brief, Dkt. 147, and—without obtaining leave from the Court—Plaintiff filed a sur-reply, again attaching a supporting declaration and exhibits, Dkt. 157.

While Plaintiff has filed more than one declaration as part of his responsive briefing, he has not submitted a separate statement of additional facts with "concise numbered paragraphs" supported by "citation to the specific evidentiary material, including the specific page number, that supports it" as required by Local Rule 56.1(b)(3) and Local Rule 56.1(d). Nevertheless, the Court has reviewed Plaintiff's briefing, declarations, deposition testimony, and exhibits for purposes of determining whether he has identified a genuine issue of material fact that could permit a reasonable jury to find in his favor.

The Court acknowledges that Plaintiff did submit a document with the *title* "statement of additional facts." Dkt. 109; however, this submission primarily argues that Plaintiff's deposition testimony cannot be used to support the Medical Defendants' motion for summary judgment because Plaintiff never signed the deposition transcript (after reserving his right to do so).[2] The Court construes this filing as a motion to suppress. *See* Fed. R. Civ. P. 32(d)(4); Local Rule 56.1(d)(4) ("statements of additional facts should not contain legal argument"). Rule 30 sets forth

---

[2] Plaintiff's additional argument that he did not have sufficient time to respond to the Medical Defendants' motion is moot, given the Court's subsequent grant of his motion for extension of time. Dkt. 111.

4

procedures for reviewing and correcting deposition transcripts. *See* Fed. R. Civ. P. 30(e); *see also Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (Rule 30(e) permits "the correction of an error in transcription" but not "a change of substance which actually contradicts the transcript"). At this point in the proceedings, the Court accepts as true Plaintiff's assertion that he did not receive his deposition transcript until November 21, 2023, and was never provided an opportunity to "make side corrections (if need be) and sign the deposition." Dkt. 109, pgs. 2, 4.[3] According to Plaintiff, this error necessarily renders the entire deposition transcript unusable at the summary judgment stage. The Court disagrees. There is no doubt Plaintiff should have had the opportunity to review his deposition transcript and submit an errata sheet. While Plaintiff could have brought his concerns to the Court's attention sooner, it was not until the Medical Defendants filed their motion for summary judgment that Plaintiff unequivocally had notice that he had been denied the right to review the transcript. He promptly filed his motion 13 days later. *See* Fed. R. Civ. P. 32(d)(4) (motion to suppress must be made "promptly after the error or irregularity becomes known"). The problem is that Plaintiff has identified no error in need of correction or any other basis for questioning the transcript's admissibility. *See* Fed. R. Civ. P. 32(b). Because the Court finds no prejudice resulting from this procedural misstep, Plaintiff's motion to suppress is denied.

### B. Factual Background[4]

---

[3] The IDOC Defendants submitted evidence that the transcript was emailed to the litigation coordinator at Menard Correctional Center on June 9, 2023, with instructions to make the transcript available to Plaintiff. *See* Dkt. 138-1. It is unclear why this never happened; however, the Court accepts as true Plaintiff's contention that it did not.

[4] The Court's recitation of the facts is based on undisputed evidence, except where otherwise noted. The Court adopts Plaintiff's additional facts set forth in his December 14, 2023 declaration to the extent these facts are generally responsive to Defendants' Local Rule 56.1(a) statement of facts and are not inconsistent with his deposition testimony. Plaintiff at times also cites to

### a. *Stateville*

On October 14, 2021, Plaintiff was brought to the bullpen at Stateville Correctional Center after an altercation with Stateville correctional officers. Dkt. 107 ("DSOF") ¶ 9. Nurse Dybas and Nurse Lewandowska reported to the bullpen and met with Plaintiff, observing him from outside the bullpen at all times. DSOF ¶¶ 10, 23-24. Plaintiff explained to the two nurses that his shoulder and knee hurt, and he could not move his left arm. DSOF ¶ 24; Dkt. 114, pgs. 49-64 ("Pl.'s Decl.") ¶¶ 20, 25. At one point, Nurse Dybas told Plaintiff to stand up straight. Pl.'s Decl. ¶ 22. When Plaintiff indicated that he already *was* standing up straight, Nurse Dybas reached into the bullpen and pushed up on Plaintiff's left arm. *Id*. Plaintiff verbally expressed pain and Nurse Dybas withdrew her arm. *Id*. at ¶ 23; *see also* Dkt. 107-2 ("Pl.'s Dep.") at 127:9-12 ("It's just this side I was leaning low I guess. And she tried to lift it up and it hurt. And she – I was like, 'Aah.' And she like, 'Oh, I'm sorry.'"). Nurse Dybas stated that she did not see any swelling or bruises. DSOF ¶ 12. In her notes, Nurse Lewandowska documented that Plaintiff demonstrated left shoulder pain, left knee pain, abrasions to his right knuckles, superficial abrasions to his right arm, a right-side head abrasion, and a quarter-sized forehead abrasion. *Id.* at ¶ 24.

Plaintiff did not explicitly ask for any ice packs or medicine, and the Medical Defendants did not offer him any. DSOF ¶ 21; Pl.'s Decl. ¶ 35. In Plaintiff's words, "I was just letting her know my main injury was my shoulder and my collarbone." Pl.'s Dep. at 129:5-6.

---

an "Exhibit 2" that appears to be video footage of the bullpen in Stateville; however, the Court disregards these citations because neither party has provided the Court with a copy of this footage for review.

After leaving the bullpen area, the Medical Defendants returned again[5] to take Plaintiff's vital signs with a blood pressure cuff. DSOF ¶ 13. Nurse Dybas began to wrap the cuff around Plaintiff's arm; however, Nurse Lewandowska instructed her, "No, don't take his vitals. If his blood pressure is high, they're going to want to keep him. We can't transfer him with high blood pressure." Pl.'s Dep. 129:18-130:6; *see also* DSOF ¶ 13. The Medical Defendants then left the bullpen without taking Plaintiff's blood pressure. DSOF ¶ 13.

Nurse Lewandowska authored an Offender Injury Report that was received and reviewed by board certified family nurse practitioner, Helen A. Bruckner, FNP-BC, the same day as the altercation and examination.[6] *Id.* at ¶ 25; *see also* Dkt. 107-4, pgs. 8-9 ("Offender Injury Report"). In the section for treatment and follow-up, Nurse Lewandowska's notes state the Medical Defendants were "unable to treat" Plaintiff. Offender Injury Report, pg. 9; *see also* DSOF ¶¶ 24, 40 (explaining that Defendants were unable to provide "hands on medical treatment" to Plaintiff because of his segregation in the bullpen). Upon review, FNP Bruckner determined that Plaintiff should be seen for additional treatment PRN, or *pro re nata*—on an as needed basis. DSOF ¶ 25.

Plaintiff was then transferred to Menard Correctional Center that same day, without any accommodation for his left arm during the 6-hour drive (such as stabilization/support or a special cuff permit). DSOF ¶ 22; Pl.'s Decl. ¶¶ 36-37. The Medical Defendants were not involved in any

---

[5] At the time of the Medical Defendants' second visit, Plaintiff had been moved to the visiting room bullpen "to wait for the people that was going to come and transport [him]." Pl.'s Dep. at 132:1-6; *see also* Pl.'s Decl. ¶¶ 29, 31.

[6] The specific timeline of events is somewhat unclear. The Offender Injury Report lists the time of injury as 10:40pm on 10/14/21 and the date of medical examination as 12:15pm on 10/14/21, which is chronologically backward. *See* Offender Injury Report, pgs. 8-9. FNP Bruckner signed the form on 10/14/21 (no specific time noted) and the first document in the record from Menard is dated 10/15/21 at 10:10am. *See* Dkt. 107-4, pg. 10. The most logical understanding of these documents is that the time of injury was incorrectly noted as 10:40pm (rather than 10:40*a.m.*) and the other dates and times are correct.

7

of Plaintiff's medical treatment after his transfer to Menard. DSOF ¶ 26.

### b. *Menard*

The parties dispute whether Plaintiff *requested* medical attention after arriving at Menard (*see generally* Pl.'s Decl. ¶¶ 38-63) or if he instead *refused* medical attention, including the taking of his vital signs (*see* DSOF ¶¶ 28-29, 36). Regardless, Plaintiff was eventually seen on December 6, 2021, for evaluation of his ongoing shoulder pain at which point he was prescribed pain medicine, given a double-cuff permit, and scheduled for an x-ray of his left shoulder. DSOF ¶¶ 37-38; *see also* Pl.'s Decl. ¶¶ 64-68. The December 29, 2021 x-ray showed "no acute osseous abnormality" of Plaintiff's left shoulder. DSOF ¶ 38. Plaintiff was later seen by an outside specialist who ordered two MRIs of his left shoulder before prescribing additional pain medication in the form of a long-acting shot. Pl.'s Decl. ¶¶ 70, 72.[7]

### III. Analysis

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement," meaning they must "receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). To prove the Medical Defendants violated his right to receive constitutionally adequate medical care, Plaintiff must establish: (1) he "suffered an objectively serious medical condition"; (2) the Medical Defendants "knew of the condition and [were] deliberately indifferent to treating" it; and (3) "this deliberate indifference injured [Plaintiff]." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 (7th Cir. 2022) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)); *see also Farmer*, 511 U.S. at 847 ("a prison official

---

[7] Plaintiff asserts that he was diagnosed with a rotator cuff injury; however, he has produced no medical records in support of this diagnosis. Plaintiff's own testimony about what his medical providers told him is inadmissible hearsay on this point. *See* Pl.'s Decl. ¶ 71 ("I was later told the MRI showed I had a rotator cuff injury to put it in lay person language").

8

may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it"). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (citation omitted).

### A. Objectively Serious Medical Condition

The Medical Defendants first argue that Plaintiff's medical need was not objectively serious. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (citations omitted). The condition "need not be life-threatening" but is considered serious if failure to treat the condition "would result in further significant injury or unnecessary and wanton infliction of pain." *Gayton*, 593 F.3d at 620; *see also Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff's injury to his left shoulder could reasonably be considered a serious medical condition.[8] It is undisputed that Plaintiff reported experiencing pain in his left shoulder. While Nurse Lewandowska's notes do not document that Plaintiff winced when Nurse Dybas attempted to move his arm, Plaintiff has consistently attested to this fact, as well as Nurse Dybas's visual confirmation that something seemed off regarding Plaintiff's posture. *See* Compl. at pg. 14; Pl.'s Dep. at 126:23-127:13; Pl.'s

---

[8] Plaintiff does not argue that his scrapes and abrasions qualify as a serious medical need, or that the Medical Defendants failed to treat a serious medical need related to his blood pressure.

Decl. ¶¶ 22-24. The Court therefore rejects the Medical Defendants' argument that Plaintiff "showed no outward signs of exhibiting serious injury." Dkt. 106 at 4. Moreover, medical providers at Menard pursued a subsequent course of action suggesting that further treatment and evaluation were in fact necessary. While Plaintiff did not present with broken bones or lacerations cutting the skin, a reasonable jury could find there was an obvious need for medical treatment to avoid exposing Plaintiff to prolonged, unnecessary pain. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021) ("Not treating pain *can* be an Eighth Amendment violation, of course, even if it is a matter of only minutes or hours.") (emphasis in original); *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating" was "an issue for the jury").

### B. Deliberate Indifference

The Medical Defendants next argue there is no evidence that they actually knew of (and disregarded) a substantial risk of harm to Plaintiff. Deliberate indifference exists only if the defendant actually "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id*. Deliberate indifference poses an exacting standard requiring "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Stockton*, 44 F.4th at 615 (citation omitted). Neither "medical malpractice, negligence, [n]or even gross negligence … equate[s] to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006).

A treatment decision that is not "actually based on a medical judgment" can support an inference of deliberate indifference. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Likewise, "another type of evidence that can support an inference of deliberate indifference is an

10

inexplicable delay in treatment which serves no penological interest." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), as amended (Aug. 25, 2016); *see Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) ("[l]eaving a serious case of GERD untreated for two months" because of prison lockdown was sufficient to show defendants' "dereliction of medical duty"); *Arnett*, 658 F.3d at 745, 753-54 (ten-month delay in treatment for rheumatoid arthritis because the prescribed medication "wasn't on the prison's approved formulary" sufficient to state a claim); *Edwards v. Snyder*, 478 F.3d 827, 830, 832 (7th Cir. 2007) (two-day delay in treatment for openly dislocated finger "because the prison doctor did not want to interrupt his holiday" sufficient to state a claim). "[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties*, 836 F.3d at 730. Where the ease of providing treatment is high – or the cost of providing treatment is low – evidence that an inmate experienced "hours of needless suffering for no reason" precludes a finding of summary judgment. *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004).

The Court finds the case of *Lewis v. McLean* to be instructive. *See Lewis v. McLean*, 864 F.3d. 556 (7th Cir. 2017). Plaintiff James Lewis awoke to a sharp pain in his back and neck that caused him to be effectively immobilized in his cell. In response to Lewis pressing his emergency call button, Nurse Angela McLean came to his cell. Lewis explained to McLean that he "couldn't move" because of "terrible pain in his back." *Id.* at 559. McLean informed Lewis that he would be escorted to the infirmary after head count, but first he would "have to stand with his back to the cell door so that he could be cuffed from behind through a slot in the door." *Id.* When Lewis explained (again) that he could not move, McLean simply walked away. It was not until an hour and a half later that McLean contacted a doctor. The Seventh Circuit concluded that a reasonable jury could find McLean exhibited deliberate indifference when she encountered Lewis "sobbing

in pain and complaining that he was unable to move, and did, literally, nothing." *Id.* at 565.

The Medical Defendants do not dispute they were aware Plaintiff was in pain, and for purposes of summary judgment the Court accepts as true Plaintiff's testimony that he informed Nurse Dybas he could not move his left arm and that he winced in pain (both visibly and audibly) when she attempted to reposition his shoulder. In response to Plaintiff's obvious need for medical assistance, the Medical Defendants' treatment plan consisted of literally doing nothing to address his complaints of pain and decreased mobility. They simply documented their observations. While the Medical Defendants attest they were unable to provide hands-on treatment because Plaintiff was in segregation and had recently been in a physical altercation with correctional officers, they do not explain why they were prevented from (at the very least) offering some form of pain medication.[9] The Medical Defendants' argument that Plaintiff never explicitly requested ice packs or pain medication at best raises a question of fact regarding the seriousness of Plaintiff's medical need; however, as discussed above, this question cannot be resolved at the summary judgment stage.

Plaintiff has also presented evidence suggesting that the Medical Defendants made a *deliberate* decision to withhold treatment. Nurse Lewandowska's instructions to terminate the examination – and Nurse Dybas's subsequent cessation of treatment – suggest that the Medical Defendants' decision-making was not based on their professional judgment at all,[10] but instead on

---

[9] It is unclear from the record whether additional relief was available, such as stabilization for Plaintiff's arm/shoulder, a special cuff permit, or specific treatment instructions that could have been shared with providers at Menard. The record is similarly silent with regard to the cost of these provisions in terms of additional delay or security concerns.

[10] The Medical Defendants' argument that their supervisor's sign-off proves that their actions that day complied with professional standards is unavailing, because the report that FNP Bruckner reviewed and approved did not include any details about the severity of Plaintiff's injury (such as Plaintiff's unusual posture or his reaction when Nurse Dybas attempted to reposition his

their desire to avoid treating Plaintiff at Stateville (recall Nurse Lewandowska's statement,"[w]e can't transfer him with high blood pressure"). The Medical Defendants have each testified that they "only desired the best possible medical outcome" for Plaintiff, DSOF ¶ 43, and a jury may find this testimony to be persuasive. Viewing the facts in the light most favorable to Plaintiff, however, a reasonable factfinder could also conclude that the Medical Defendants opted not to treat Plaintiff because they simply did not want to. As in *Lewis*, the Court finds that the factual record regarding the Medical Defendants' state of mind precludes a grant of summary judgment in their favor. *See also Gayton*, 593 F.3d at 624 (reversing grant of summary judgment where testimony indicated the defendant nurse "did nothing" because "it was approaching the end of her shift and she wanted to let the next nurse handle the situation").

### C. Punitive Damages

Finally, the Medical Defendants argue that the Court should dismiss Plaintiff's claim for punitive damages because '[t]here is nothing blameworthy about either Nurse's conduct." Dkt. 106, pg. 15. Again, the Court disagrees. It is well established that punitive damages and § 1983 liability both require the defendant to have acted with "a reckless or callous disregard to the federally protected rights of others." *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 930 (7th Cir. 2004) (citing *Smith v. Wade*, 461 U.S. 30, 35, 51 (1983)); *see also Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir. 1988) ("Because this case involves the Eighth Amendment, the level of culpability required for a liability finding is the same as the punitive damage standard: both require a determination that the defendants acted with deliberate indifference or reckless disregard

---

shoulder). The fact that medical providers at Menard engaged in a subsequent course of treatment that included prescription pain medication, a double-cuff permit, and x-rays of his left shoulder further undermines the Medical Defendants' argument that they were in fact exercising their medical judgment when they decided not to treat Plaintiff's injuries.

for the plaintiff's right to security."). As there are questions of material fact regarding whether Plaintiff presented with a serious medical need to which the Medical Defendants responded with deliberate indifference, the Court declines to strike Plaintiff's request for punitive damages at this point in the litigation.

## IV. Conclusion

For the foregoing reasons, the Medical Defendants' motion for summary judgment is denied.

Date: 1/10/25

/s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge